UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Fernando Armendariz, et al.

            v.                                    Civil No. 1:22-cv-00536-JL
                                                  Opinion No. 2023 DNH 078
Sig Sauer, Inc.

**MEMORANDUM ORDER**

In this consolidated product liability action, the defendant Sig Sauer, Inc. moves to sever and transfer the plaintiffs' claims to their home districts, arguing that the claims are misjoined and improperly brought in this court. It also moves to dismiss the plaintiffs' New Hampshire Consumer Protection Act counts for failure to state a claim upon which relief can be granted.

The plaintiffs are 20 owners or users of Sig Sauer's P320 pistol. Each plaintiff was allegedly injured by an unintentional discharge of a P320. The plaintiffs maintain that they did not touch or pull the trigger or otherwise intend to fire the gun. Instead, they allege that the P320's "defective nature" caused the discharge. None of the plaintiffs resides in New Hampshire, but Sig Sauer is headquartered in this state. Thus, venue is undisputedly proper in this court and the court has personal jurisdiction over Sig Sauer. See 28 U.S.C. § 1391(b)(1). This court also has subject-matter jurisdiction over the plaintiffs' claims under 28 U.S.C. § 1332 (diversity) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

After considering the parties' written submissions and hearing oral argument, the court denies Sig Sauer's motion to sever and transfer and grants its motion to dismiss for the reasons stated below.

**Background.**  For purposes of this order, the court recites the relevant facts from the plaintiffs' operative complaint,[1] accepts those facts as true, and draws all reasonable inferences from those facts in the plaintiffs' favor.  See Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The plaintiffs are 20 law enforcement officers or individuals trained to use firearms, as well as some of their spouses.[2]  The plaintiffs reside in Connecticut, Florida, Georgia, Texas, Massachusetts, Louisiana, Minnesota, New Jersey, Oklahoma, Tennessee, Virginia, Washington, and Wisconsin.  Each suffered injuries after their P320 discharged a bullet without any intentional firing by a shooter.  The unintentional discharges occurred in the plaintiffs' home states and arose under different factual scenarios but have certain commonalities -- the users were not touching the trigger, did not intend to pull the trigger or otherwise fire the weapon, and did not drop the weapon, causing a so-called "drop fire."  Moreover, none of the plaintiffs' P320 pistols featured an external or manual safety.

Sig Sauer designed and manufactured its P320 pistol in, and disseminated its marketing materials from, New Hampshire.  In certain marketing materials for the P320

---

[1] See First Amended Complaint (doc. no. 28).

[2] Another group of plaintiffs (represented by the same counsel) has filed a similar lawsuit against Sig Sauer that is pending before the undersigned judge.  See Docket No. 1:23-cv-00209-JL.  That case is effectively stayed pending resolution of Sig Sauer's motions to sever and dismiss in this case.  See Stipulation (doc. no. 13 in 23-cv-00209-JL).

pistol, Sig Sauer states that it has "designed safety elements into every necessary feature on this pistol.  From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."[3]

Plaintiffs assert claims for negligence, strict product liability, violation of the New Hampshire Consumer Protection Act, and, for certain spouse-plaintiffs, loss of consortium.

**Analysis.**  The court begins with Sig Sauer's motion to sever and transfer, before turning to its motion to dismiss the CPA claims.

**Motion to sever and transfer**.  Persons may join in one action as plaintiffs if "(A) they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1); see also Fed. R. Civ. P. 42(a).  Because "the joinder rules result in beneficial economies of scale and judicial efficiency by resolving related issues in a single lawsuit . . . the preconditions for permissive joinder are construed liberally in order to promote the broadest scope of action consistent with fairness to the parties."  Beaulieu v. Concord Grp. Ins. Co., 208 F.R.D. 478, 479 (D.N.H. 2002) (Muirhead, M.J.) (citing Pujol v. Shearson/Am. Express Inc., 877 F.2d 132, 134 (1st Cir.1989) and United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)).  Under certain circumstances, the court, in its discretion, may

---

[3] Doc. no. 28 at ¶¶ 52, 56.  Sig Sauer marketed the safety of the P320 in other publications.  See id. at ¶¶ 57, 78.

sever misjoined claims, see Fed. R. Civ. P. 21, or "order a separate trial of one or more

separate issues [or] claims[.]" Fed. R. Civ. P. 42(b).  But "[a]s long as the parties meet

the test for permissive joinder, courts generally allow joinder unless other considerations

such as avoiding prejudice and delay, assuring judicial economy, or safeguarding

fundamental fairness counsel otherwise." Abraham v. Allen Mello Dodge, Inc., No. 11-

CV-329-JD, 2011 WL 4625686, at *3 (D.N.H. Oct. 3, 2011) (DiClerico, J.).

Sig Sauer does not meaningfully contend that the plaintiffs fail to satisfy the

elements of Rule 20(a)(1).  Indeed, in product liability cases like this one arising from an

allegedly defective condition of a single product, courts have found that consolidated

plaintiffs satisfy the "same transaction or occurrence" and common question of law or

fact requirements for permissive joinder.[4]  Sig Sauer also recognizes the efficiencies of

conducting consolidated discovery and pre-trial proceedings.  It focuses instead on the

potential prejudice[5] and confusion that could result from a joint trial of the plaintiffs'

claims.  Sig Sauer's concerns about prejudice and jury confusion arising from a

consolidated trial, while valid, are premature at this early procedural stage.

Consolidation of discovery and pre-trial proceedings benefits the parties and the court,

_____

[4] See Obj. (doc. no. 35) at 9-13.

[5] Sig Sauer contends that it will be prejudiced by a joint trial in this court because it will be
unable to subpoena non-party witnesses in the plaintiffs' home states to testify in person at trial.
Sig Sauer has not identified these potential witnesses or explained why they would not be called
to testify – and appear voluntarily – as part of the plaintiffs' case in chief.  Nevertheless, Sig
Sauer's concerns about compelling non-party witness testimony that is beyond the scope of this
court's subpoena power are well taken and will factor into the court's later consideration of
whether some alternative to a consolidated trial in this district is warranted.

and the plaintiffs' choice of forum must be respected at this time, particularly when that

forum is the defendant's home state.

For now, the court envisions this case proceeding like a consolidated multi-district

litigation, but it will strongly reconsider the possibility of severing the plaintiffs' claims

and transferring them to their home districts for separate trials.  See 28 U.S.C. § 1407, et

seq.  The court also encourages the parties – as they conduct their Rule 26(f) conference

and prepare a discovery plan and schedule for this case – to consider structuring the

deadlines with the potential for separate, transferred trials, or some other alternative to a

consolidated joint trial, in mind.  Sig Sauer's motion to sever and transfer is accordingly

denied without prejudice to its ability to re-raise similar arguments at a later procedural

stage.

**Motion to dismiss**.  Plaintiffs contend that Sig Sauer violated the New Hampshire

Consumer Protection Act by misrepresenting the P320's "characteristics . . . uses, [or]

benefits" and misrepresenting that the P320 was "of a particular standard, quality, or

grade."  RSA 358-A:2(v) and (VII).  Under the CPA, it "shall be unlawful for any person

to use any unfair method of competition or any unfair or deceptive act or practice in the

conduct of any trade or commerce within this state."  RSA 358-A:2 (emphasis added).

"The New Hampshire Supreme Court has not specifically addressed how the

'within this state' requirement applies to misrepresentation claims under [RSA] 358-

A:2." Ortiz v. Sig Sauer, Inc., 448 F. Supp. 3d 89, 107 (D.N.H. 2020).[6]  In several recent

---

[6] Neither party cites case law discussing the territorial reach of the Massachusetts Consumer
Protection Act (Mass. Gen. Laws Ann. ch. 93A, § 2), which often provides a useful analog when

decisions, however, this court has consistently found that a misrepresentation is made "within this state" for purposes of the CPA only when "a person receives a misrepresentation in the State of New Hampshire."  Id.; see also Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc., 565 F. Supp. 3d 222, 236 (D.N.H. 2021) (McCafferty, C.J.) ("[T]he court cannot reasonably infer from the allegations in the proposed amended complaint that Fujifilm would have received any alleged misrepresentations within New Hampshire."); Luna v. Atrium Med. Corp., 561 F. Supp. 3d 62, 68 (D.N.H. 2021) (McCafferty, C.J.) ("As a matter of law, it is therefore immaterial that defendant may have made misrepresentations or falsely advertised the C-Qur V-Patch in New Hampshire. A consumer who receives misrepresentations of goods or false advertising outside of New Hampshire cannot state a claim under the NHCPA."); BAE Sys. Info. & Elecs. Sys. Integration Inc. v. SpaceKey Components, Inc., No. 10-CV-370-LM, 2011

---

interpreting New Hampshire's statute.  Under the Massachusetts CPA, "[n]o action shall be brought or maintained . . . unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  Mass. Gen. Laws Ann. ch. 93A, § 11.  The First Circuit Court of Appeals has identified three factors that are relevant to this determination, among others:  "(1) where defendant committed the deception; (2) where plaintiff was deceived and acted upon the deception; and (3) the situs of plaintiff's losses due to the deception."  Roche v. Royal Bank of Can., 109 F.3d 820, 829 (1st Cir. 1997).  Applying these factors, courts have found that misrepresentations originating in Massachusetts but received out of state are outside the scope of the Act.  See, e.g., Arabian Support & Servs. Co., Ltd. v. Textron Sys. Corp., 368 F. Supp. 3d 211, 229 (D. Mass.), aff'd, 943 F.3d 42 (1st Cir. 2019) ("Where ASASCO was allegedly deceived, and the situs of its loss, plainly weigh in TSC's favor. The alleged oral misrepresentations by Mr. Boyamian upon which ASASCO says it relied occurred in Egypt, France, and Saudi Arabia. ASASCO is not located in the Commonwealth and did not incur its losses in the Commonwealth. It also did not receive or rely on the alleged misrepresentations in Massachusetts."); Uncle Henry's Inc. v. Plaut Consulting Co., 399 F.3d 33, 45 (1st Cir. 2005) (affirming dismissal of CPA claim, and finding trial court judge's decision "clearly correct," where "the alleged misrepresentations were received primarily in Maine, where their impact primarily was felt").

6

WL 1705592, at *6 (D.N.H. May 4, 2011) (McCafferty, M.J.) ("[Q]uite clearly,

Environamics stands for the proposition that the locus of the conduct proscribed by RSA

358–A:2, V and VII is the place where the misrepresentation is received.  Here, that can

only be Virginia."); Environamics Corp. v. Ferguson Enterprises, Inc., No. CIV. 00-579-

JD, 2001 WL 1134727, at *4 (D.N.H. Sept. 24, 2001) (DiClerico, J.) ("However, the

deceptive act of misrepresenting the condition of the pump occurred in New Hampshire

when Environamics received the pump and its allegedly false documentation [in New

Hampshire].").  Because none of the plaintiffs received Sig Sauer's alleged

misrepresentations in New Hampshire, the alleged offending conduct did not occur

"within this state," and their CPA claims fail as a matter of law.

Plaintiffs assert that these decisions are incorrect and impermissibly limit the

scope of the CPA.  They also suggest that other decisions from this court open the door to

the conclusion that misrepresentations received outside of New Hampshire are actionable

under the CPA.[7]  The court disagrees.  Both of the decisions that the plaintiffs cite to

support their position – Pacamor Bearings, Inc. v. Minebea Co. and Precourt v. Fairbank

Reconstr. Corp. – are readily distinguishable from the circumstances presented here.

The court's discussion of the CPA in Pacamor Bearings arose in the context of a

motion in limine to exclude evidence of "acts outside the state or sales to out-of-state

customers" from trial.  Pacamor Bearings, 918 F. Supp. at 504.  The court was therefore

---

[7] See Obj. (doc. no. 36-1) at 1 (citing Pacamor Bearings, Inc. v. Minebea Co., 918 F. Supp. 491 (D.N.H. 1996) and Precourt v. Fairbank Reconstr. Corp., 856 F. Supp. 2d 327 (D.N.H. 2012)).

not assessing the sufficiency of a complaint or determining whether certain factual

allegations could give rise to a CPA claim as a matter of law.  Moreover, it is not clear

from the decision whether the CPA claim was based on fraudulent statements or

misrepresentations, and if so, where those statements were received.  Instead, the court

referenced "fraudulent conduct allegedly known and perpetuated by a business within the

borders of the state," which satisfied "the statutory locality prerequisite."  Id.; see also

BAE, 2011 WL 1705592, at *4, ("Unfortunately, the opinion in Pacamor Bearings says

little about the facts giving rise to the plaintiff's CPA claim other than to suggest that it

was based on false advertising.").  The court simply determined that it would not exclude

the evidence of defendants' extra-territorial conduct from trial.  Precourt is similarly

inapposite.  There, the alleged misrepresentations did not occur "within" New Hampshire

because they were received by consumers out of state, and the company that made the

misrepresentations was in Nebraska.  Precourt, 856 F. Supp. 2d at 343.

        The plaintiffs' arguments therefore do not persuade the court to change course and

diverge from the now growing line of cases finding that a misrepresentation occurs

"within" New Hampshire if it is received in New Hampshire.  As the court has reiterated,

"the question is the locus of the offending conduct. Where, as here, a plaintiff alleges

offending conduct that took place outside New Hampshire, it fails to state a claim under

the CPA."  BAE, 2011 WL 1705592, at *6.  Sig Sauer's motion to dismiss is granted and

the plaintiffs' New Hampshire CPA claims are dismissed with leave to amend their

complaint to assert claims under their respective home state's consumer protection

statutes.

**Conclusion.**  For the reasons set forth above, Sig Sauer's motion to sever and

transfer venue[8] is DENIED and its motion to dismiss[9] is GRANTED.  The plaintiffs shall

have 30 days from the date of this order to file an amended complaint as outlined above.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:  June 27, 2023

cc:     Daniel Ceisler, Esq.
        Larry Bendesky, Esq
        Robert J. Mongeluzzi, Esq.
        Robert W. Zimmerman, Esq.
        Ryan D. Hurd, Esq.
        Benjamin T. King, Esq.
        Mark V. Franco, Esq.
        Brian Keith Gibson, Esq.
        Carolyn Davis, Esq.
        Demetrio F. Aspiras, III, Esq.
        Robert L. Joyce, Esq.

---

[8] Doc. no. 32.

[9] Doc. no. 33.